**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**AMY BOLLINGER,**

               **Plaintiff,**

**-vs-**                                                                     **Case No. 2:08-cv-119-UA-DNF**

**MARCO BAY HOMES, LLC, a dissolved**
**Florida limited liability company, OLDE**
**MARCO MORTGAGE, LLC, a Florida**
**limited liability company, DONALD**
**WOJCIECHOWSKI, an individual**

               **Defendant.**

_____

# ORDER

This matter came before the Court without oral argument upon consideration of Defendants' Motion to Dismiss (Doc. 18) and Plaintiff's response in opposition thereto (Doc. 20).

**I. Overview**

On February 14, 2008, Plaintiff filed a ten-count Complaint against Defendants, alleging, *inter alia*, that Defendants improperly induced Plaintiff to enter into a contract for the construction of a modular home[1] in Collier County, Florida. Count I of the Complaint states a claim under Section 10(b) of the 1934 Securities and Exchange Act and corresponding Rule 10b-5.[2] Count II

---

[1] Modular, or pre-fabricated, homes are homes which are built from manufactured sections that are delivered to and assembled at the home site.

[2] *See* 15 U.S.C. § 78j and 17 C.F.R. § 240.10b-5, respectively.

states a claim for failing to register as a broker or dealer of securities under 15 U.S.C. § 78o(a)(1). Counts III through X all state claims arising under Florida law which are not pertinent here.

Defendants have moved to dismiss the two federal claims (i.e., Counts I and II) and have asked the Court to decline to exercise its supplemental jurisdiction over the remaining State law claims. Specifically, Defendants argue that the transaction which forms the predicate for Plaintiff's federal claims does not involve a "security" within the meaning of federal securities law. Thus, Defendants contend Counts I and II fail to state a claim upon which relief may be granted and must therefore be dismissed.

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 1367. The parties agree that federal law is controlling with respect to Counts I and II, and that Florida substantive law applies to Counts III through X.

## II. Factual Background

Sometime in late October or early November, 2006, the parties agreed to enter into a joint venture for "the purpose of buying and investing in a property" which they would hold for a "suitable period" of time and later sell "at a good profit" (Doc. 1, Ex. A at 1). Pursuant to the terms of the joint venture agreement, the Plaintiff was obligated to purchase a specific parcel of real estate in Collier County by obtaining financing on the balance of the purchase price[3] (Doc. 1, Ex. A at 1). Plaintiff was then obligated to "Obtain construction financing for a proposed single

---

[3]While not explicitly mentioned in the joint venture agreement, the Court has assumed that Plaintiff was also required to make the down payment.

family home to be constructed on the property,"[4] including financing for "all the costs to construct a home...reserves for interest, impact fees, insurance, architectural [work], engineering, survey work, etc." (Doc. 1, Ex. A at 2). For their part, Defendants were required to make all mortgage payments due on property, including all payments due on the first mortgage and construction loan, develop plans and specifications for the home, and actually construct the home (Doc. 1, Ex. A at 2). The parties agreed that Plaintiff would be entitled to 50% of all profits, net of operating expenses, on the project or $15,000.00, whichever was greater, and that both parties would bear 50% of any losses (Doc. 1, Ex. A at 3-4).[5]

Consistent with the terms of the joint venture, Plaintiff obtained financing to purchase the real estate and then obtained the construction financing through one of the Defendants, Olde Marco Mortgage, LLC (Doc. 1, ¶16-17). Plaintiff closed on the construction loan in September 2006 (Doc. 1, ¶21). After September 2006, the project languished and Defendants refused to begin construction. (Doc. 1, ¶21-23). Defendants then eventually stopped making payments on the mortgage and construction loan, and the project completely unraveled.

## III. Standard of Review

In ruling on a motion to dismiss, the Court must view the complaint in the light most favorable to the Plaintiff, *see*, *e.g.*, *Jackson v. Okaloosa County, Fla.*, 21 F.3d 1531, 1534 (11th Cir. 1994), and must limit its consideration to the pleadings and any exhibits attached thereto.

---

[4] Unlike typical construction lending arrangements, here the construction lender, Defendant Olde Marco Mortgage, LLC, apparently agreed to subordinate its loan to the primary mortgage holder.

[5] The parties also agreed to arbitrate any disputes arising under the joint venture and building agreements, but apparently neither party desires to enforce the arbitration provisions.

FED. R. CIV. P. 10(c); *see also GSW, Inc. v. Long County, Ga.*, 999 F.2d 1508, 1510 (11th Cir. 1993). The Court will liberally construe the complaint's allegations in the Plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411,421 (1969). However, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003).

In reviewing a complaint on a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "courts must be mindful that the Federal Rules require only that the complaint contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *U.S. v. Baxter Intern., Inc.*, 345 F.3d 866, 880 (11th Cir. 2003) (citing FED. R. CIV. P. 8(a)). This is a liberal pleading requirement, one that does not require a plaintiff to plead with particularity every element of a cause of action. *Roe v. Aware Woman Ctr.for Choice, Inc.*, 253 F.3d 678, 683 (11th Cir. 2001). However, a plaintiff's obligation to provide the grounds for his or her entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). The complaint's factual allegations "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

**IV. Analysis**

Federal securities law defines the term "security" to include "investment contracts." *See* 15 U.S.C. §§ 77b(a)(1) and 78c(a)(10). The U.S. Supreme Court, in turn, has defined "investment contracts" to include any "transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party...."

*SEC v. W.J. Howey Co.*, 328 U.S. 293, 298-99 (1946).  The Eleventh Circuit has cautioned that the term "solely" in *Howey* is not to be interpreted restrictively.  *SEC v. Merchant Capital, LLC*, 483 F.3d 747, 754-55 (11th Cir. 2007)(citing *Williamson v. Tucker*, 645 F.2d 404, 418 (5th Cir. 1981)). Instead, the focus must be on the dependency of the investor on the entrepreneurial or managerial skills of a promoter or other party.  *Id.* at 755 (citing *Gordon v. Terry*, 684 F.2d 736, 741 (11th Cir. 1982)).  The crucial inquiry is the amount of control that the investor retains under the written agreement.  *Albanese v. Fla. Nat'l Bank of Orlando*, 823 F.2d 408, 410 (11th Cir. 1987) (citations omitted).  If the investor retains the ability to control the profitability of his investment, the agreement is not a security.  *Id.* (citations omitted).   As Defendants point out, however, there is a also presumption that a general partnership interest or joint venture is not an "investment contract." *Merchant Capital, LLC*, 483 F.3d at 755 (11th Cir. 2007).  This presumption will nevertheless give way where: (1) an agreement among the parties leaves so little power in the hands of the partner or venturer that the arrangement in fact distributes power as would a limited partnership; (2) the partner or joint venturer is so inexperienced and unknowledgeable in business affairs that he is incapable of intelligently exercising his partnership or venture powers; or (3) the partner or venturer is so dependent on some unique entrepreneurial or managerial ability of the promoter or manager that he cannot replace the manager of the enterprise or otherwise exercise meaningful partnership or venture powers."  *Id.* (citations omitted).

Here, Defendants rely on the parties' joint venture and building agreements (Doc. 1, Exs. A and B) and argue that the presumption against joint ventures should apply.  Specifically, Defendants argue that, notwithstanding some allegations in the Complaint, the parties' joint venture agreement constitutes a "single unique agreement (for a specific lot [of real estate])

between two parties" – not a security (Doc. 18 at 3-4).  Defendants, however, do not attempt to analyze the agreement or cite to any specific provisions of the agreement which would support their view that the presumption against joint ventures should apply.  Nor do Defendants address the applicability of any of the three exceptions to the presumption against joint ventures.

Plaintiff counters by arguing that the presumption against joint ventures does not apply because Plaintiff was an inexperienced investor whose only role was to bring money to the table (Doc. 20 at 6).  Specifically, Plaintiff cites to the Complaint and notes that the allegations include the fact that Plaintiff was a "26-year-old copier salesperson with no real estate or other investment experience, relying on the representations of a man nearly twice her age who professed to (and appeared to) have substantial real estate and development experience" (Doc. 20 at 6).  Indeed, Plaintiff contends that she had no control over the construction, financing, development, marketing, and sales associated with the joint venture – her only role was to "bring money and obtain the construction loan" (Doc. 20 at 6).

Based on the terms of the parties' joint venture agreement and the allegations in the Complaint, the Court concludes that the presumption against joint venture agreements constituting securities does not apply.  Both the express terms of the joint venture agreement and Plaintiff's allegations in the Complaint – which must be accepted as true at this stage of the proceedings – demonstrate that Plaintiff was merely a passive investor with little or no control over her investment.  Whatever label the parties may have attached to their agreement, Plaintiff appears to have been, at best, nothing more than an investor whose only responsibilities were the contribution of capital and obtaining financing.  In short, Plaintiff had no meaningful control over her investment.

**V. Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss (Doc. 18) is **DENIED**.

**DONE** and **ORDERED** in Chambers, Orlando, Florida on November 6, 2008.

Copies furnished to:

Counsel of Record
Unrepresented Party

GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE